IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **AMERICAN LIGHTING COMPANY, INC.** | * * * |
| **Plaintiff** | * * |
| v. | * CIVIL ACTION NO.: * |
| **UNITED STATES OF AMERICA** | * * |
| **Defendant** | * |

## COMPLAINT

AMERICAN LIGHTING COMPANY, INC. ("AMERICAN LIGHTING") brings this action against the United States pursuant to 26 U.S.C. § 7422, for a refund of internal revenue taxes totaling $54,565.50 (plus interest) owed to it (the "ERC refunds") – and wrongfully denied by the Internal Revenue Service ("IRS") – as Employee Retention Credits ("ERC").[1] Under the Coronavirus Aid, Relief, and Economic Security Act, PL 116-136, March 27, 2020, 134 Stat 281 ("CARES Act") and Internal Revenue Code § 3134, which created the ERC, Plaintiff is entitled to ERC refund for the tax period ending September 30, 2021 ("Q3 2021").

## NATURE OF ACTION

1. Plaintiff files this civil action under I.R.C. § 7422 for the recovery of employment taxes, including the refundable excess credit (together with statutory interest and any appropriate attorney fees), authorized to be paid to Plaintiff under I.R.C. § 3134 and the CARES Act, but wrongfully denied by the IRS. This Complaint is proper under 28 U.S.C. § 2401 and under I.R.C. §§ 6532 and 7422, as Plaintiff's ERC claims were duly filed more than 6 months prior to the filing

---

[1] Employee Retention Credits or ERC are also interchangeably referred to as Employee Retention Tax Credits or ERTC.

of this Complaint and the quarter in question was denied by the IRS less than two years ago.[2]

## PARTIES

2. Plaintiff AMERICAN LIGHTING is a corporation that sells lighting and electrical materials and is located in Birmingham, Alabama.

3. The Defendant is the United States of America.

## JURISDICTION AND VENUE

4. Jurisdiction in this Court is proper under 28 U.S.C. §§ 1331, 1340, and 1346(a)(1), and under 26 U.S.C. (I.R.C.) § 7422.

5. Venue in this Court is proper under 28 U.S.C. § 1402(a)(2) and 1391(e)(1), as Plaintiff's principal place of business is located in this judicial district.

6. This Complaint is timely under 28 U.S.C. § 2401(a) and under I.R.C. §§ 6532(a)(1) and 7422(a) because Plaintiff duly filed its claim for ERC refunds with the Secretary more than six months prior to the date of filing this Complaint and within two years of receiving its disallowance for the claimed quarter from the IRS.[3]

## THE EMPLOYEE RETENTION CREDIT

7. Beginning in 2020, the COVID-19 virus created a global pandemic that swept through all fifty states and resulted in governmental orders to address the pandemic that disrupted the United States' local and national economies. Those orders formed a nexus of federal, state, and local government mandates that created a comprehensive regulatory scheme limiting commerce,

---

[2] See Exhibit "A"-Plaintiff's 941X for Q3 2021, and Form 2848 Power of Attorney that was attached to the 941X.

[3] See Exhibit "C", IRS 105C letter disallowing ERC claim for Q3 2021. The IRS basis for denial was that Plaintiff was not an eligible employer because "The maximum amount of Employee Retention Credit which can be claimed by an employer which is a recovery startup business is $50,000.00 per quarter." Plaintiff appealed this decision within 30 days, providing proof that it was not a recovery startup business during the claimed quarter but has not received any response from the IRS.

travel, and group meetings with the objective to limit the spread of COVID- 19. The governmental response to that public health emergency involved historically unprecedented measures, including lock down orders, social distancing mandates, and forced business closures. The economic effects of those policies were profound. Deemed the "greatest threat to prosperity and well-being the US has encountered since the Great Depression[,]" the estimated cumulative financial costs of COVID-19 were forecast at $16 trillion.[4]

8.   In response to the COVID-19 pandemic, the federal government enacted sweeping economic measures to assist American businesses and citizens, including the CARES Act, enacted in March 2020. Section 2301 of the CARES Act created the ERC.[5]

9.   The ERC is a broad-based, fully refundable tax credit designed to stimulate economic recovery, support job retention, encourage business sustainability, and mitigate the impacts on U.S. businesses from the unprecedented challenges posed by the pandemic. Congress intended for the credit to be broadly applicable to help businesses survive a historic pandemic that disrupted the global economy. The credit is available to certain eligible employers for the last three quarters of 2020 and for the first three quarters of 2021.

10.   The ERC is a payroll tax credit available to certain employers who qualify under the CARES Act.  Employers file an amended quarterly payroll tax return (a 941X) with the IRS to claim the ERC credit.

11.   Plaintiff AMERICAN LIGHTING duly claimed ERC credits for tax periods ending June 30, 2020 ("Q2 2020"), September 30, 2020 ("Q3 2020"), March 31, 2021 ("Q1 2021"), June

---

[4] Alvin Powell, *What might COVID cost the U.S.? Try $16 trillion*, The HARVARD GAZETTE, Nov. 10, 2020. https://news.harvard.edu/gazette/story/2020/11/what-might-covid-cost-the-u-s-experts-eye-16-trillion/.
[5] Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, §2301, 134 Stat 281 (March 27, 2020).

3

30, 2021 ("Q2 2021"), and September 30, 2021 ("Q3 2021"). The IRS has paid Plaintiff its claimed ERC for Q2 2020, Q3 2020, Q1 2021, and Q2 2021.[6] The IRS disallowed Plaintiff's claim for Q3 2021, which is the subject of this suit for refund, less than two years ago.

### Threshold Requirement – 3 Ways to Qualify for an ERC

12. An employer is eligible to claim an ERC if it carried on a trade or business during the quarter at issue and satisfies one of three prongs for eligibility: (1) significant declining gross receipts; (2) full or partial suspension of operations due to government orders, or (3) recovery startup business.[7] CARES Act § 2301(c)(2); I.R.C. § 3134(c)(2).[8]

### The Suspension Test

13. A business can qualify as an eligible employer to receive ERC using the suspension test. Under this second prong for determining eligibility, an employer is eligible to claim ERC credits if "the operation of [Plaintiff's] trade or business [was] fully or partially suspended . . . due to orders from an appropriate governmental authority limiting commerce, travel, or group meetings (for commercial, social, religious, or other purposes) due to the coronavirus disease 2019 (COVID-19)." I.R.C. § 3134(c)(2)(A)(ii)(I). Plaintiff clearly is eligible under the suspension test.

14. Eligibility under the "suspension test" under the CARES Act § 2301(c)(2) or I.R.C. § 3134(c)(2)(A)(ii)(I) contains no financial element whatsoever.

15. The CARES Act § 2301(c)(2) and I.R.C. § 3134(c)(2)(A)(ii)(I) do not require eligible employers to have suffered any decline in gross receipts at all in order to qualify for ERC

---

[6] See Exhibit "B" IRS Overpayment Notices for Q2 2020, Q3 2020, Q1 2021, and Q2 2021.
[7] Plaintiff is not a "recovery startup business" as defined under I.R.C.§3134(c)(2)(A)(ii)(III), and so it does not claim ERC credits thereunder, nor does it claim the credit under the significant decline in gross receipts prong.
[8] The current version of I.R.C. § 3134 became effective on November 15, 2021, and, as relevant here, is identical to the version of I.R.C. § 3134 in effect from March 11, 2021, to November 14, 2021, and to the version of the CARES Act in effect from January 1, 2021, to March 10, 2021. For ease of reference, this Complaint cites I.R.C. § 3134 when discussing 2021 ERC requirements.

credits using the suspension test. Also, the suspension test does not require an employer's business to shut down completely at any point at all during the pandemic.[9]

### American Lighting's Eligibility for the Credit

16. AMERICAN LIGHTING duly filed for and is eligible to receive ERC under the suspension test for Q3 2021.

17. Despite AMERICAN LIGHTING's ERC eligibility for all quarters claimed (and the IRS's payment for all other quarters), the IRS wrongfully denied this Q3 2021 ERTC claim.

### The ERC Generally

18. Employers who qualify for the ERC for the first three quarters of 2021 may receive a credit of up to $7,000 per employee for each quarter in which they qualify. Consolidated Appropriations Act of 2020 (CAA), Pub. L. No. 116-260, §207(b).

19. The amount of ERC is not limited to the amount of employment taxes the employer paid, and against which the credit is applied. Rather, if the amount of the credit exceeds the applicable employment taxes for the calendar quarter, "such excess shall be treated as an overpayment that shall be refunded under sections 6402(a) and 6413(b)." CARES Act § 2301(b)(3); I.R.C. § 3134(b)(3).

### AMERICAN LIGHTING COMPANY, INC.

20. During all applicable quarters of the pandemic, AMERICAN LIGHTING COMPANY, INC. was a corporation that sold lighting and electrical materials. Plaintiff's principal

---

[9] In fact, IRS Notice 2021-20 interprets a partial suspension to occur if the employer's operations continue but "are subject to modification due to a governmental order (for example, to satisfy distancing requirements), [then] such a modification of operations is considered to be a partial suspension of business operations due to a governmental order if the modification required by the governmental order has more than a nominal effect on the business operations under the facts and circumstances." *Guidance on the Employee Retention Credit under Section 2301 of the Coronavirus Aid, Relief, and Economic Security Act* IRS Notice 2021-20 *(Answer 17).*

5

place of business was in Birmingham, Alabama.  AMERICAN LIGHTING COMPANY, INC. was established on July 1, 1975.

21.    AMERICAN LIGHTING houses all of its management, accounting and billing, purchasing, project management, and sales on-site at the Birmingham office location.  Prior to the pandemic, there were generally 8 employees staffing the main location in Birmingham.  Prior to the pandemic, AMERICAN LIGHTING supplied electrical parts and equipment to and serviced customers such as individuals, businesses, and governmental entities.  AMERICAN LIGHTING supplied material on an as-needed basis to its customers.

22.    Due to the pandemic and resulting governmental orders, beginning in March 2020, on the administrative side, several employees transitioned to remote work and work hours were reduced.  AMERICAN LIGHTING could not maintain full-time status for all of its employees because there was a significant decrease in the volume of work projects, which was due to orders requiring social distancing, among other things. As a result, AMERICAN LIGHTING was forced to reduce employee work hours. Employees were required to follow social distancing requirements, masking, as well as mandatory quarantining and isolation protocols. The outside sales force could only work from their homes over their telephones. All of the aforementioned activities resulted in more than nominal disruptions to Plaintiff's operations due to governmental COVID orders.

23.    There were also major disruptions to AMERICAN LIGHTING's supply chain due to the pandemic.  Projects were delayed and there was an inability to get products to customers. There was a product shortage by the company's vendors, and there were delays in getting products that some vendors did have in stock. These disruptions were due to governmental orders related to COVID.

24. AMERICAN LIGHTING had retrofit projects with several customers that were delayed all due to COVID related governmental orders.

25. AMERICAN LIGHTING's sales process was also interrupted due to governmental orders during the pandemic. Plaintiff could not access many of its customers in any regular way, disrupting its operations. These disruptions were due to governmental orders related to COVID.

26. Restrictions due to government orders from an appropriate governmental authority had the effect of both fully and partially shutting down AMERICAN LIGHTING and had a greater than nominal impact on AMERICAN LIGHTING's productivity, revenue and operations.

27. Because AMERICAN LIGHTING's operations were partially suspended due to government orders that meet the statutory criteria for the claimed quarter in 2021, AMERICAN LIGHTING is entitled to its claimed ERC, plus interest, attorney fees and costs.

### Third Quarter 2021

28. On or about March 27, 2023, Plaintiff duly filed a Form 941-X, *Adjusted Employers Quarterly Federal Tax Return or Claim for Refund*, claiming the ERC for Q3 2021. ("Q3 2021 Form 941-X").

29. Line 18a of the Q3 2021 Form 941-X reported that Plaintiff's nonrefundable portion of ERC was $2,401.25.

30. Line 26a of the Q3 2021 Form 941-X reported that Plaintiff's refundable portion of ERC was $52,164.25.

31. Line 30 of the Q3 2021 Form 941-X reported $59,369.92 in qualified wages for the ERC.

32. Line 31a of the Q3 2021 Form 941-X reported $18,580.80 in qualified health plan expenses for the ERC.

33. Based upon the foregoing, Plaintiff timely claimed an ERC for Q3 2021 in the amount of $54,565.50.

34. The IRS has issued a Statutory Notice of Claim Disallowance for Q3 2021.

## CAUSES OF ACTION

35. Pursuant to I.R.C. § 7422, a taxpayer may file a civil action against the United States for the recovery of taxes after a claim for refund has been filed with the Secretary.

36. Pursuant to I.R.C. § 6532, no suit for refund shall begin (a) prior to the expiration of six months from the date of filing the claim for refund, or (b) after the expiration of two years from the date the Secretary notifies the taxpayer that its claim has been disallowed.

37. Plaintiff satisfies each of these requirements.

38. Plaintiff qualified for the ERC for Q3 2021.

39. The IRS has not paid Plaintiff's ERC claim for Q3 2021.

40. The IRS has denied Plaintiff's claim less than two years ago and such claim has been pending for more than six months.

41. Plaintiff is entitled to the full amount of ERC claimed, together with interests pursuant to I.R.C. § 6611, as well as reasonable attorney fees and legal costs associated with this cause of action, pursuant to 28 U.S.C § 2412 and/or I.R.C. § 7430.

### Count One
### Q3 2021 Refund Claim

42. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

43. Plaintiff is an eligible employer qualified to receive $54,565.50 of ERC for Q3 2021.

44. On or about March 27, 2023, Plaintiff duly filed a Form 941-X claiming an ERC

for Q3 2021 in the amount of $54,565.50.

45. Accordingly, Plaintiff is entitled to a refund of ERC in the amount of $54,565.50, along with statutory interest.

## Count Two
## Attorney Fees and Administrative Costs

46. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

47. In addition to its refund and statutory interest, Plaintiff is also entitled to its administrative costs, including attorneys' fees.

48. The Defendant must pay reasonable litigation and administrative costs to a prevailing party unless its position in the proceeding was "substantially justified." I.R.C. § 7430(c)(4)(B).

49. Here, the Defendant's position was not substantially justified.

50. In failing to pay Plaintiff's 2021 ERC claim that was objectively due based upon the full or partial suspension of Plaintiff's operations as provided for in the clear language under I.R.C. § 3134, and for the 2021 quarter claimed, the Defendant's position was not substantially justified. The IRS wrongfully claimed the amount Plaintiff requested exceeded the allowable "start-up business" ERTC allowed. However, this business was not a "recovery start-up" and the IRS paid all other quarters claimed. Plaintiff explained this in its appeal, but the IRS ignored the appeal.

51. Plaintiff's entitlement to the ERC at issue is straightforward. The Defendant's refusal to promptly pay the ERC refund now past due is, therefore, not substantially justified. Indeed, Plaintiff has had to hire an attorney, pay a filing fee and engage in litigation to bring this claim which is straightforward, was wrongfully denied and should have been paid more than two

years ago.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court enter a judgment against Defendant, the United States of America, for:

(A) A tax refund for Q3 2021 representing ERC in the amount of $54,565.50 with statutory interest thereupon;
(B) Reasonable litigation and administrative costs, including attorneys' fees, as allowed by law; and
(C) All other relief as this Court deems necessary.

Respectfully submitted, this the 25th day of June, 2025.

**AMERICAN LIGHTING COMPANY, INC.**

*/s/ Keith B. Franklin*
E.J. SAAD              (ASB 8614D51E)
MATTHEW ANDREWS        (ASB 1672E47A)
JAMIE F. LEE           (PRO HAC)
KEITH B. FRANKLIN      (ASB 8196A56K)
*Attorneys for AMERICAN LIGHTING COMPANY, INC.*

**OF COUNSEL:**

**E.J. SAAD LAW FIRM**
6207 Cottage Hill Road, Suite G
Mobile, Alabama 36609
Telephone: (251) 660-0888
ejsaad@ejsaadlaw.com
mandrews@ejsaadlaw.com
jamielee@ejsaadlaw.com
k.franklin@ejsaadlaw.com